**Will GRIMES, et al., Plaintiffs,**

v.

**PITNEY BOWES INCORPORATED, Defendant.**

Civ. A. No. C79–779A.

United States District Court, N.D. Georgia, Atlanta Division.

April 1, 1983.

266

Mary Welcome, Atlanta, Ga., for plaintiffs.

Ronald M. Green, Frank C. Morris, Jr., Washington, D.C., for defendant.

## ORDER

FORRESTER, District Judge.

This employment discrimination case, brought pursuant to 42 U.S.C. § 1981, is presently before the court on plaintiffs' motion for class certification. Plaintiffs seek this court to certify this action as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and to define generally the class as those black employees who have been disciplined and/or discharged by defendant and those persons who have been denied promotional opportunities within defendant's higher paying job classifications. *See* Brief in Support of Motion for Class Action Order, at 1–2 (filed November 1, 1979). In addition, "[s]hort of granting Plaintiffs' Motion, Plaintiffs would urge that the Court consider a conditional certification or at least allow a further leave to reinstitute this Motion after all discovery has been completed." Post Hearing Brief in Support of Plaintiffs' Motion for Class Certification, at 9 (filed November 2, 1982).

## I. INTRODUCTION.

On November 1, 1979, plaintiffs filed a motion for class certification. On December 19, 1979, Judge Newell Edenfield dismissed the Title VII claims which had been

filed and dismissed any claims of sex discrimination.

On August 18, 1982, this court issued an order setting an evidentiary hearing on the motion for class certification. The court noted that *any facts* on which the movant intended to rely to support the motion must be introduced in evidence at that time. Moreover, the court underscored the importance of the movant's burden of proof on the propriety of the certification.

On October 1, 1982, an evidentiary hearing on plaintiff's motion for class certification was held. The court heard testimony from Mr. Will Leroy Grimes, Ms. Ella Victoria Davis, and Mr. Ray Allen Ayres. In addition, the plaintiffs stated that they wished to add to the record defendant's answers to plaintiff's first interrogatories, numbers 11, 13, and 40. Finally, in plaintiff's Post Hearing Brief in Support of Plaintiff's Motion for Class Certification, at 3, the court was invited to examine specifically the deposition of Linda Bethea.

In earlier pleadings the plaintiff has proposed six possible class groupings. For reasons which will appear hereafter, the court believes that the proper class is all past and present black employees of the Atlanta branch of the defendant who have been intentionally discriminated against on account of their race in respect to work assignment, training, discipline, or opportunity for promotion. The court has specifically excluded from the class applicants for employment for none of the putative class representatives has any cause to complain in this respect, and, therefore, their cases do not present common questions of law or fact in this respect. *See General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

## II. FINDINGS OF FACT.

### A. General Background and Atmosphere.

The three class representatives from whom the court has heard were employees at the Atlanta Branch of Pitney Bowes, Inc. There is a regional office of the defendant in the city, but the employment practices there are not challenged in this suit.

Within the Atlanta Branch there are three separate departments. In the sales department there are employees who endeavor to sell or lease the office equipment manufactured by the defendant. There is an administrative department which keeps up with inventory, processes orders, and monitors service contracts. There is a service department, the employees of which install and service the office equipment sold or leased by the defendant.

Plaintiff Grimes was at all relevant times employed in the sales department. Additionally, he was the employee relations deputy, and in that capacity he had a unique position to know of employee complaints, at least within that department. He knew what each of the salesmen in the department was producing but did not have access to payroll or personnel records. His job required that he spend most of his time in outside sales work, and so he was in the office for less than an hour and a half a day on the average.

Plaintiff Davis was hired as a contract specialist, apparently one of the higher paying non-supervisory positions within the administrative section.

Plaintiff Bethea was hired in 1977 and as late as 1981 was still working for Pitney Bowes. She worked first as an inventory specialist but held several jobs in the company. The defendant has regular meetings of a body called The Council for Personnel Relations. Ms. Bethea was the elected representative from the administrative section and in that position heard from a number of employees about their grievances.

All three plaintiffs observed generally that they thought that black employees at the Atlanta Branch were receiving disparate treatment in the areas of work assignment, training, discipline, and promotion. The management at the facility was aware that some of its black employees did not feel that they were receiving fair treatment. Ms. Bethea was told this by a member of management when she was hired. Grimes was told by a sales supervisor that

he did not believe that a black would be promoted to a supervisory position in the sales department because of the "complexion" of the office. At the time that Grimes was hired, there were only two other black salesmen and only a very few blacks were employed in the service department compared with quite a large number of whites. Ms. Bethea testified that none of the white employees ever voiced any feelings which indicated that they felt that they too were being treated unfairly in work assignment, training, discipline or promotion.

### B. Evidence of Typicality.

Salesmen at Pitney Bowes are paid on a commission basis or a draw against commissions. Each has an assigned territory. Grimes testified that the sales territories assigned to blacks contained "swamps, rivers, and grasslands while whites were given office buildings, parks and whatever." He said that he observed black employees in the sales department being disciplined more often than white employees and that he never observed a black employee promoted to a supervisory position. From conversations with black employees in the administrative section, he believed that they were receiving disciplinary actions more frequently than were whites also. White salesmen told him that they made more than he did, but he could not specifically recall comparing paychecks.

Both Davis and Bethea indicated that they were not sufficiently trained so as to avoid errors and mistakes. They further testified that when they made mistakes, line supervisors would report this fact to higher management but would not undertake to retrain them or work with them to straighten out any misunderstandings. Both sought promotions which were not granted. Bethea on one occasion asked to be transferred to the sales force, but this was denied. She testified that Maxine Campie, Herman Peredez, and Mark Arlivaro were promoted into sales positions even though they had only limited prior sales experience.

Ms. Bethea thought that some of the adverse disciplinary actions taken against her were because she was assigned more work than the time available to accomplish it. She named sister black employees Eason, Allen, Gordon, Hill and Sanders as others who had complained to her about inequitable work distribution. Ms. Bethea was disciplined on a number of occasions on account of tardiness or quantity of production or errors. She named supervisors Hawkins and Potvin as two white employees who had tardiness problems but who were nevertheless promoted to higher positions. Bethea related that Eason, Allen, Gordon and Stanley had complained to her about disparate treatment in the administration of company discipline. As indicated, Ms. Bethea felt that some of her problems in the quality of her performance were related to the fact that she did not receive follow-up training whereas white employees did. She said that sister employees Allen, Gordon, Fushay, and Eickleberger, all blacks, had made similar complaints to her. Finally, she said that employee Eason had complained to her about being denied promotional opportunities. She mentioned the promotion of one white employee who was advanced although there were equally qualified blacks and specifically complained about the promotion of Mary Donovan to the supervisor of collections after she had been with Pitney Bowes for less than a year in the capacity of a secretary.

### C. Evidence of Commonality and Questions Affecting Only Individual Members.

During the time that Mr. Grimes was employed at Pitney Bowes he had at least two automobile accidents. One required that he miss three to four months of work, and another necessitated a convalescent period of two weeks. Also during the time he was attending a night law school. Because of this and his absences, he recognized his inability to meet established quotas and asked his sales manager to establish a special quota for him.

Ms. Davis initially left her position with the company to go under the care of a doctor, presumably for the treatment of stress. Her doctor approved her return to work only on the condition that she be placed in a minimal pressure position and that she be allowed to work a shorter workday. She received medical disability for some short period of time and then was offered a leave of absence. When she refused to take the leave of absence, she was discharged.

In Ms. Bethea's case, as early as November of 1978, she received a warning from the company about her attendance pattern. In the time period covered by the report, she took 61 hours of sick leave, 32 hours of personal time, and was late on 19 separate occasions, missing more than two hours of work. Five months later she received another warning that during this period she had missed 20 hours of work for personal time, 11 hours of work for sick leave, and had been late on a number of occasions, said tardinesses totaling 56 minutes. As late as January of 1981, she was still being reminded by the company of her poor attendance records. And on at least one occasion she was reprimanded for leaving her position at the switchboard and going to the second floor of the building. When she requested a transfer to the sales department, she was given one try-out in the field and was not rated well on her performance.

### D. Evidence of Numerosity.

During the period of May 7, 1977 until August 8, 1980, there were 36 black employees in the administrative section or sales division of the Atlanta Branch Office. Fourteen of those were terminated, nine quit and thirteen remained. No figures have been presented by either side on black employees in the service department.

### III. CONCLUSIONS OF LAW.

Before a class action may be maintained, one or more members of the class must show that the group that he or she wishes to represent is so numerous that joinder of all the members is impracticable, that there are questions of law or fact common to the class, and that the claims of the representative parties are typical of the claims of the class. Fed.R.Civ.P. 23(a)(1)–(3). These three requirements are commonly referred to as numerosity, commonality and typicality. In addition, the representative parties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). The inquiry does not end with subdivision (a), however, for even if this court determines that the action satisfies the requirements of Rule 23(a), it is also necessary that the action fall within one of the three categories of class suits described in Rule 23(b). Inasmuch as plaintiffs seek to certify the class pursuant to Rule 23(b)(2), two factors must be present: (1) The opposing party's conduct or refusal to act must be "generally applicable" to the class and (2) final injunctive or declaratory relief must be requested for the class. *See generally* 7A C. Wright & A. Miller, Federal Practice & Procedure § 1775 (1972).

It is axiomatic that "the one who asserts the class must show some evidence or reasonable estimate of the number of class members." 3B J. Moore and J. Kennedy, Moore's Federal Practice ¶ 23.05(3) at 23–61 (2d Ed.1982). The estimates of the class size given by the three representatives vary widely and are really guesses. The only reliable evidence on the size of the class shows that no more than 36 black individuals were working for the defendant's sales and administrative section and, of course, we have no figures for the service section. It is recognized that the plaintiff need not show the precise number of the class members, and it is the law of this Circuit that the numerosity requirement has less significance where there are allegations of class-wide discrimination. *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983). It is equally true, however, that mere allegations of numerosity are insufficient to meet this prerequisite. All that the evidence shows here is the total number of black employees who would fit into the class is well less than 50 and that the plaintiffs have been able to identify

only 11 or 12, including themselves, who have even voiced complaints typical of the complaints of the class. This does not show that joinder is impracticable. *See, e.g., Kelley v. Norfolk & Western Railway Co.,* 584 F.2d 34 (4th Cir.1978); *Greene v. Brown,* 451 F.Supp. 1266, 1276 (E.D.Va.1978); *Wright v. Stone Container Corp.,* 386 F.Supp. 890 (E.D.Mo.1974), *aff'd,* 524 F.2d 1058 (8th Cir.1975); *Southern v. Board of Trustees For Dallas Independent School District,* 318 F.Supp. 355, 360 (N.D.Tex. 1970), *aff'd,* 461 F.2d 1267 (5th Cir.1972) (per curiam).

█ The typicality requirement obliges the class representative to demonstrate that there are other members of the class who have similar grievances. *Wright v. Stone Container Corp.,* 524 F.2d 1058 (8th Cir. 1975). The three class representatives have complaints which are generically similar to several other members of the proposed class. Whether it is the assignment of an unfavorable sales territory to a black salesman or the assignment of an overload of paperwork to a black administrative employee, the issue of work assignment is generally presented by the evidence and the claims. This is also true with discipline and training as it relates to discipline and to promotion. The court would find that the showing made by the plaintiffs on this requirement is sufficiently convincing at least to consider a preliminary class certification.

█ The commonality prerequisite of the rule requires that the proponent of the class action show that the issues are subject to generalized proof and that such generalized proof will be applicable to the class as a whole. *Nichols v. Mobile Board of Realtors, Inc.,* 675 F.2d 671 (5th Cir.1982). While the issues are generically similar, and the law forbidding a limitation on the right of a black person to enter into employment contracts on the same terms and conditions as white persons is well recognized, it is extremely doubtful that in this disparate treatment case common questions of fact will be presented. The Atlanta Branch Office is small, and it would appear that a number of the employment decisions are made by a variety of low level supervisors. There is no showing that the practices about which the plaintiffs complain are as a result of any corporate policy or even as a result of the policy of the chief official of the Atlanta Branch. There are many different occupational titles within the class, and factors affecting the work assignment for each will vary. Additionally, of course, the real or claimed reason for the discipline of any employee, at least in this case, is going to vary with the conduct, actual or alleged, of that employee. Promotional decisions in each instance must finally be determined in the context of the alternatives presented to management at the time the promotion was given. Even the allegations in this case regarding training are not subject to generalized proof. The court does not understand the plaintiffs to say that blacks are being denied training at all. Rather, it does understand the plaintiffs to say that when black employees encounter specific problems, they do not always receive personalized instruction which may assist the employee in overcoming the particular problem. Even if the plaintiffs in this case were able to establish certain of their claims such as the failure to promote blacks on pattern-or-practice evidence, the trial does not end there. The defense to each of the claims in this case would undoubtedly be highly individualized. As the Supreme Court cogently articulated in *Falcon:*

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Falcon,* 102 S.Ct. at 2371 (footnote omitted). This uniqueness of the factual basis for each claim and the defense thereto clearly appears from the facts recited concerning

the low production of Grimes, the discharge of Davis, and the discipline of Bethea for problems with absenteeism.

 Finally, the court must consider whether the representatives of the would-be class can adequately represent the interests of the class. Stated in the simplest terms, this means that the court must consider whether it would be fair to the class members to have their claims decided based on the evidence of the class representatives as prosecuted by the attorneys whom they have chosen. *See generally,* 7 C. Wright & A. Miller, Federal Practice & Procedure § 1765, at 620–30 (1972). Not only does it appear that individual issues predominate over class concerns with reference to major claims of the three class representatives; it further appears, construing the evidence most favorably to the proponents of the class, that there may have been substantial nondiscriminatory reasons for the actions taken by the company against Grimes, Davis and Bethea.

It is always unpleasant for a court to be critical of any members of the bar. It does appear, however, that in this case there is some question about the diligence of plaintiff's counsel in pursuing aggressively class discovery, and it is beyond debate that the memorandum filed after the hearing by the attorneys for the would-be class representatives might, under the most charitable characterization, be termed a mere cursory recitation, without analysis, of the evidence. The court knows the professional abilities of plaintiffs' counsel and knows of other occasions when their advocacy has been more thorough. It is, however, immaterial as to why their performance did not live up to their past practice, for the issue is whether or not it is fair that other members of the class be bound by their achievements in this case.

## IV. SUMMARY AND CONCLUSIONS.

 For the reason given above, the court finds that the plaintiffs have failed to carry their burden with respect to the prerequisites of numerosity and commonality and has substantial doubts about the adequacy of representation which the class representatives will provide. For all of these reasons, class certification is DENIED at this point. Pursuant to Fed.R.Civ.P. 23(d)(4), the pleadings are hereby AMENDED to eliminate therefrom class allegations, and the individual plaintiffs may continue this action on an individual basis. Discovery as to the individual claims will commence with the filing of this order and shall, unless extended, expire four months thereafter.