**GENERAL ELECTRIC COMPANY AND SUBSIDIARIES, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 03–5153.**

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 27, 2004.

Robert L. Moore, II, Miller & Chevalier, Chartered, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Thomas D. Johnston and Alan I. Horowitz. Of counsel on the brief were Patricia M. Lacey and Laurence A. Hoch, General Electric Co. and Subsidiaries, of Albany, New York.

Charles Bricken, Attorney, Tax Division, United States Department of Justice, of

Washington, DC, argued for defendant-appellee. With him on the brief were Eileen J. O'Connor, Assistant Attorney General, and Thomas J. Clark, Attorney.

Jerome B. Libin, Sutherland Asbill & Brennan LLP, of Washington, DC, for amici curiae. With him on the brief were Steuart H. Thomsen, Mary E. Monahan, and James V. Heffernan.

Before RADER, BRYSON, and GAJARSA, Circuit Judges.

BRYSON, Circuit Judge.

This federal income tax case concerns the amount of interest the government owes the taxpayer, General Electric Company and Subsidiaries ("GE"), based on GE's overpayment of its taxes for 1978. A statute enacted in 1994 provided that as of January 1, 1995, the rate of interest paid on corporate tax overpayments in excess of $10,000 would be reduced from its previous level. GE argues that the lower rate does not apply in this case because by 1995 GE's overpayment of taxes for 1978 had already been repaid and only the accrued interest on the overpayment remained outstanding. The Court of Federal Claims rejected GE's legal theory and held that the lower statutory interest rate applies to the remaining obligation to GE for the years beginning with 1995. *Gen. Elec. Co. v. United States*, 56 Fed.Cl. 488 (Fed.Cl. 2003). We agree with the Court of Federal Claims that GE was not entitled to earn interest at the higher statutory rate on the entire remaining obligation even though the principal of the overpayment had been fully retired by the time the new statutory interest rate took effect. Although we agree with the trial court's analysis and its rejection of GE's claim, we remand for the trial court to consider whether GE is entitled to an adjustment in the amount of interest it is owed.

I

The overpayment at issue in this case arose from a 1993 decision of the Tax Court holding that GE had overpaid its income taxes for 1978 by $15,497,938. As a result of that decision, there was also an abatement of restricted interest in the amount of $11,185,064.39. Pursuant to an agreement in response to that ruling, the IRS made adjustments in GE's tax account, applying the overpayment and interest to offset GE's tax obligations for other years. In applying $17,437,905.92 of that amount to GE's tax liability for 1988, however, the IRS made an error that deprived GE of $810,006.94 in statutory interest on the overpayment for which GE should have been credited. On February 4, 2002, the government paid that sum to GE, together with the interest that had accrued since 1988. The dispute in this case is over whether the IRS used the correct interest rate in calculating the amount of compound interest earned on the $810,006.94 between January 1, 1995, and February 4, 2002.

Section 6611 of the Internal Revenue Code, 26 U.S.C. § 6611, provides that interest "shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621." Section 6621, in turn, provides that the rate of interest paid on overpayments shall be the sum of the federal short-term interest rate, as calculated according to a formula set forth in the statute, plus "3 percentage points (2 percentage points in the case of a corporation)." 26 U.S.C. § 6621(a)(1). Section 6622 provides that in computing any amount of interest required to be paid

under the Internal Revenue Code, the interest will be compounded daily. 26 U.S.C. § 6622.

In 1994, Congress amended section 6621(a)(1) by adding the following language:

> To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3)) exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

Pub. L. No. 103–465, § 713, 108 Stat. 5001–02 (1994). The new language has remained a part of the statute since that time, without material change. Because the new statutory language was enacted as part of the statute that gave effect to the agreements reached at the Uruguay Round of Multilateral Trade Negotiations conducted under the auspices of the General Agreement on Tariffs and Trade ("GATT"), the lower corporate overpayment interest rate of 0.5 percent set forth in the 1994 amendment is referred to as the "GATT rate." The higher interest rate on corporate overpayments that applied to all corporate overpayments prior to the 1994 Act is referred to as the "regular rate." Under the 1994 Act, the regular rate continues to apply to small corporate overpayments (i.e., those not in excess of $10,000).

In the Court of Federal Claims, GE argued that the GATT rate set forth in the 1994 statute did not apply to the government's remaining obligation based on GE's 1978 overpayment, because the principal of that overpayment had long since been retired and only accrued interest on the overpayment remained to be paid. GE interpreted section 6621 to mean (1) that the GATT rate applies only to a corporate overpayment of tax exceeding $10,000 that was outstanding as of the effective date of the 1994 statute, and (2) that the term "overpayment of tax" does not include interest on an overpayment.

In response, the government argued that the "overpayment" referred to in section 6621 means the amount by which the taxpayer overpaid its taxes for the year of the overpayment, not the amount of the original overpayment that remained outstanding at the time the statute took effect. Thus, the government argued that the GATT interest rate applies to all principal and interest stemming from the portion of an overpayment that exceeds $10,000. The government explained that under its interpretation of section 6621, all interest on a sum attributable to an overpayment "derives either from a basket in which has been put the first $10,000 of a taxpayer's overpayment, or from a second basket in which has been put the remainder of that taxpayer's overpayment. The basket from which the interest is derived compels the rate at which interest is to be compounded."

The Court of Federal Claims rejected GE's argument. It began its analysis by characterizing a tax overpayment as the difference between the tax owed for a particular taxable period and the tax paid for that period. From that premise, the court reasoned that once the tax overpayment is determined for a particular taxable period, it is fixed for purposes of determining the interest rates that are payable under section 6621(a)(1). Thus, in the trial court's view, the amount of the "tax overpayment" does not vary as the government makes refunds or credits that retire the overpayment, nor does the amount of the overpayment increase as the government's debt accrues statutory interest. (In this re-

spect, the court noted, the calculation of an overpayment differs from the calculation of a tax underpayment, which includes accrued interest.) Accordingly, the court adopted the government's interpretation of section 6621, although it used a different metaphor to explain the operation of the statute. The court stated that its analysis "suggests that, once triggered, the statute requires the interest stream owing to a given [corporate] tax overpayment to be carved in two—one flow attributable to the amount less than or equal to the first $10,000 of overpayment and the other to the amount greater than this figure." The first stream would earn interest at the regular rate and the second would earn interest at the GATT rate. Although the court concluded that section 6621 required the interest stream to be divided into two parts, one earning interest at the GATT rate and one earning interest at the regular rate, the court nonetheless sustained the government's position on summary judgment that, on the facts of this case, the GATT interest rate applied to the entire outstanding balance owed to the taxpayer as of January 1, 1995. Disagreeing with the court's analysis, GE took this appeal.

## II

■ As it did in the Court of Federal Claims, GE argues that the GATT rate is not applicable to any portion of the accrued interest on its 1978 overpayment. GE acknowledges that section 6621 makes the regular interest rate applicable only to small corporate overpayments not exceeding $10,000 (and to the first $10,000 of larger corporate overpayments). It also acknowledges that its original overpayment for 1978 and the amount still owed from that overpayment as of January 1,

1995, were both much larger than $10,000. Nonetheless, GE argues that the rate of interest to be paid on the entire amount owed to GE based on its 1978 overpayment is governed by the regular interest rate that section 6621 designates for small corporate overpayments of $10,000 or less, rather than the lower GATT rate that the statute designates for corporate overpayments in excess of $10,000.

GE's reasoning is as follows: In addressing the interest rate to be paid on overpayments, section 6621 refers to the overpayments themselves, not to the compound interest that may have accrued on the overpayments. Prior to 1995, the government had repaid all of the principal and much of the interest that it owed GE based on the 1978 overpayment, through credits applied to other tax years. Because the principal of the overpayment had been repaid by 1995, GE contends that there was no longer any "overpayment" to be subject to the lower statutory interest rate as of January 1, 1995, when the lower statutory interest rate took effect. That is, the amount of the overpayment, according to GE, was zero at that time, and because a zero overpayment does not "exceed[ ] $10,000," the interest rate to be applied to the sum consisting of accrued interest on the original overpayment is not the lower GATT rate, but the higher, regular rate designated by section 6621(a)(1) for overpayments of $10,000 or less.

That theory is creative but not convincing. We agree with GE and the trial court that the term "overpayment," as used in the Internal Revenue Code, does not ordinarily include interest that is earned on the overpayment. We do not agree with GE, however, that the statutory provision that preserves the regular interest rate for small corporate overpay-

ments of $10,000 or less should be interpreted to mean that the interest on very large overpayments should accrue interest at the rate Congress reserved for small overpayments. We think it highly unlikely that Congress intended the exception to the GATT rate for small overpayments to have such dramatic potential consequences for overpayments vastly larger than the modest overpayments of $10,000 or less that are eligible for the regular rate. Moreover, we think it unlikely that Congress intended for the applicable interest rate to turn on a bookkeeping matter such as whether the government is regarded as having paid back the principal of an overpayment before paying back the interest. We agree with the government and the trial court that the statutory language does not compel such a counterintuitive interpretation. While the statutory scheme is not easy to unravel, the most straightforward interpretation of the statutory language leads us to reject GE's submission.

The basic flaw in GE's position is this: Section 6611 authorizes the allowance of interest on "any overpayment," and it dictates that interest shall be paid "at the overpayment rate established under section 6621." Section 6621 establishes the "overpayment rate" and provides special rates for corporate overpayments of tax. Because the two statutes are integrally related—one establishing the right to interest on overpayments and the other setting the applicable interest rates—the term "overpayment" must mean the same thing in the two sections. The problem with GE's legal position in this case is that if GE is correct that the interest due it as of January 1, 1995, was not interest on any amount of "overpayment," as that term is used in section 6621, then it would have no right to interest on that sum under section

6611, since section 6611 provides for interest on "any overpayment." Thus, if GE is entitled to interest—whether at the GATT rate, or the higher rate, or some combination of the two—it can only be because the statutes treat the interest as being paid on an "overpayment" of some size. In that case, the only remaining question is how large the interest-bearing overpayment is. And in answer to that question, there are only two plausible candidates: (1) the amount of the original overpayment for 1978, i.e., $15,497,938; or (2) the amount derived from the overpayment that remained unpaid as of January 1, 1995, i.e., $810,006.94, plus the interest that had accrued on that sum between 1988 and 1995.

GE's only response to this point is to argue that the authorization for payment of interest on overpayments comes not from section 6611, but from section 6622, which provides that in computing the amount of interest required to be paid under the Internal Revenue Code, "such interest ... shall be compounded daily." That argument, however, is unpersuasive. Section 6622 merely provides the method for computing all interest required to be paid under the Code. It is section 6611 that authorizes the IRS to pay interest to taxpayers who have made overpayments, which interest is then calculated as provided in sections 6621 and 6622. We therefore must look to section 6611 to determine whether the government owes GE interest attributable to the 1978 overpayment, and in order for section 6611 to require the payment of interest on "any overpayment," there must be an overpayment to which interest attaches.

### III

While we conclude that section 6611 requires us to reject GE's theory of

the case, it is more difficult to choose between the two remaining possibilities—treating the "overpayment" as the original 1978 overpayment of $15,497,938 or treating the "overpayment" as the $810,006.94 plus interest still owed to GE by the government as of January 1, 1995. Fortunately, while choosing between those two options poses a difficult issue of statutory construction, the consequence of the choice has little practical significance, as it is unlikely to result in a difference of more than a few hundred dollars interest in any case.

The trial court concluded that the reference to an "overpayment" in 26 U.S.C. § 6621(a)(1) was intended to denote the difference between the tax owed and the tax paid by the taxpayer for the taxable year in question, without reference to any credits, refunds, or accrued interest that may have altered the amount of the obligation stemming from that overpaid sum. That approach would lead to the conclusion that the interest from all but $10,000 of the original $15,497,938 overpayment would accrue at the lower GATT rate. As the trial court explained, those two sums can be envisioned as generating separate interest streams to which different interest rates are assigned.

The Internal Revenue Code does not contain a general definition of "overpayment," but the Supreme Court has defined the term to mean "any payment in excess of that which is properly due." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531, 68 S.Ct. 229, 92 L.Ed. 142 (1947). That definition is consistent with the trial court's interpretation of the term as meaning the difference between tax payments and tax liability for a particular period, without taking into account any refunds, credits, or interest that would alter that amount.

The trial court noted that the term "overpayment," as used in the Internal Revenue Code, generally does not incorporate the interest earned on the amount by which the taxpayer has overpaid its taxes. *See Alexander Proudfoot Co. v. United States*, 197 Ct.Cl. 219, 454 F.2d 1379, 1384 (1972). For example, where the Code intends to refer to the combination of an overpayment and interest on the overpayment, it so specifies. *See* 26 U.S.C. § 6402(a) (allowing the IRS to credit overpayments, "including any interest allowed thereon," against the liability of the person who made the overpayment). Similarly, the statute of limitations for collecting interest on an overpayment is not the three-year limitations period applicable to recovery of the overpayment itself, 26 U.S.C. § 6511, but the general six-year statute that applies to suits against the government, 28 U.S.C. § 2401. The principle underlying that distinction is that an overpayment is a payment that relates to a tax obligation, while interest on an overpayment is simply a general debt of the government, which is not subject to the special rules associated with the adjustment and collection of obligations under the tax laws. *See Proudfoot*, 454 F.2d at 1384; *United States v. CSX Corp.*, 95–1 U.S.T.C. ¶ 50,291, 1995 WL 381537 (E.D.Va.1995); *Lyons v. United States*, 93–1 U.S.T.C. ¶ 50,026 (S.D.Iowa 1992); Rev. Rul. 57–242, 1957–1 C.B. 452, 1957 WL 11387; Rev. Rul. 56–506, 1956–2 C.B. 959, 1956 WL 11820.

Defining the "overpayment" as the difference between tax paid and tax liability, rather than the amount owed to the taxpayer at any particular time on the taxpayer's account for a particular year, accords with the position taken by both parties that accrued interest is not counted in determining the size of an overpayment. The parties agree that if, for example, a

taxpayer makes an overpayment of $9000 for a particular taxable year, the entire $9000 sum would continue to draw interest at the regular rate, even if the $9000 overpayment accrued $2000 interest before it was refunded, so that the government's total indebtedness in connection with the taxpayer's overpayment ultimately exceeded $10,000.

The trial court's construction of the term "overpayment" as being a fixed amount that is not reduced as the overpayment is retired is also consistent with the construction of the term "underpayment" in a parallel provision of section 6621. Section 6621(c) provides for a higher rate of interest to be charged on corporate underpayments of more than $100,000. The amount of the underpayment is calculated according to the amount by which the taxpayer underpaid its taxes for a given year, without regard to whether the taxpayer has subsequently paid off any portion of the underpayment. Thus, as is made clear by an example in the regulations pertaining to section 6621, if a taxpayer were assessed an underpayment of $60,000, which the taxpayer paid, and the taxpayer were then assessed an additional deficiency of $50,000 for the same taxable year, the total underpayment for purposes of section 6621 would be $110,000, even though the assessment against the taxpayer never exceeded $60,000 at any one time. *See* 26 C.F.R. § 301.6621–3(d) (Example 2). Although overpayments and underpayments differ in some respects—particularly with respect to the status of accrued interest vis-à-vis the principal—there is no reason to treat overpayments differently from underpayments with respect to whether, for purposes of section 6621, the amount of the overpayment or underpayment is reduced by credits or refunds that reduce the amount due to be paid.

In sum, the treatment of the term "overpayment" in the Code and by the parties leads us to conclude that, as the trial court held, the "overpayment" in section 6621 refers to GE's original overpayment of taxes for taxable year 1978, not the amount still owing to GE in 1995 after the original sum was reduced by the allocation of credits and increased by the accrual of interest.

Although we agree with the trial court's legal analysis, we note that the court did not expressly address whether its "two streams" approach to interest (one stream consisting of all compound interest accruing on the first $10,000 of the overpayment and the other stream consisting of all compound interest accruing on the remainder of the overpayment) would entitle GE to draw interest at the regular rate on any portion of the government's remaining obligation as of January 1, 1995. The court's ruling in favor of the government on summary judgment had the effect of denying GE any interest at the regular rate. By way of defending that outcome, the government, in a footnote in its brief, argues that it had already paid off all of the principal and interest attributable to the first $10,000 of the overpayment by 1995, so all of its remaining obligation was subject to the GATT interest rate. The trial court did not take any position on that issue. Although the issue has only a small potential effect on the amount of interest owed by the government, we think the most appropriate course is to remand the case to give the trial court an opportunity to determine whether, consistent with the proper statutory analysis, GE is entitled to any additional interest attributable to the first $10,000 of the original overpayment for 1978.

*AFFIRMED IN PART and REMANDED IN PART.*