**RADIOSHACK CORPORATION,
on behalf of itself and others
similarly situated, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–28T.

United States Court of Federal Claims.

June 29, 2012.

---

618

Allen Duane Webber, Baker & McKenzie LLP, Washington, D.C., for Plaintiff.

Jacob E. Christensen, John A. DiCicco, Steven I. Frahm, and G. Robson Stewart, United States Department of Justice, Tax Division, Washington, D.C., for Defendant.

**OPINION AND ORDER DENYING PLAINTIFF'S THIRD MOTION FOR CLASS CERTIFICATION**

WILLIAMS, Judge.

In this action Plaintiff seeks a refund of communications excise taxes. This matter

comes before the Court on Plaintiff's third motion to certify a class of similarly situated taxpayers. Because the Court lacks jurisdiction over the tax refund claims of putative class members, and because RadioShack fails to satisfy the requirements of Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff's motion is denied.

### Background [1]

Section 4251(a) of the Internal Revenue Code imposes an excise tax on amounts paid for communication services, including long-distance calls that are charged on the basis of both distance and duration. Carriers collect the tax from consumers, pay the tax to the Internal Revenue Service ("IRS"), and file a corresponding tax return.

In the 1990s, carriers stopped using distance to price long-distance calls and began charging per-minute rates. The IRS continued to assess the excise tax during this period, a practice that several courts eventually held was improper. *See, e.g., Fortis, Inc. v. United States,* 447 F.3d 190 (2d Cir.2006); *Reese Bros., Inc. v. United States,* 447 F.3d 229 (3d Cir.2006); *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328 (11th Cir. 2005); *OfficeMax, Inc. v. United States,* 428 F.3d 583 (6th Cir.2005); *Nat'l R.R. Passenger Corp. v. United States,* 431 F.3d 374 (D.C.Cir.2005).

In June 2006, the IRS issued Notice 2006–50, 2006–1 C.B. 1141, admitting that the IRS had improperly collected excise taxes and instructed carriers to cease collecting and paying the tax paid on time-only long-distance service billed after July 31, 2006. Notice 2006–50 authorized taxpayers to request a credit or refund on their 2006 federal income tax returns for excise taxes paid on services billed after February 28, 2003, and before August 1, 2006. On January 29, 2007, the IRS issued Notice 2007–11, 2007–1 C.B. 405, which supplemented Notice 2006–50 by clarifying the conditions that individual tax-

---

**1.** This background is derived from Plaintiff's amended complaint, the motion papers, and prior decisions issued during this litigation. *See RadioShack Corp. v. United States,* 566 F.3d 1358 (Fed.Cir.2009); *RadioShack Corp. v. United* *States,* No. 06–28T, 2009 WL 514065 (Fed.Cl. Feb. 27, 2009) (unpub.); *RadioShack Corp. v. United States,* 82 Fed.Cl. 155 (2008). It should not be construed as findings of fact.

payers were required to meet and answering questions that arose after Notice 2006–50 was issued.

Under the IRS's procedures, taxpayers could request and obtain a refund on the 2006 income tax return or file an amended tax return for 2006. For individuals who were not required to file a 2006 income tax return, the IRS created Form 1040EZ–T for requesting a refund. Under this process, which will remain in effect until July 27, 2012, to request a credit or refund for the actual amount of excise tax paid, taxpayers must complete Form 8913, Credit for Federal Telephone Excise Tax Paid, and attach that form to their 2006 Form 1040 Series federal income tax return or to an amended tax return for that year.

The excise taxes at issue had been collected by telephone companies and paid directly to the IRS, leaving many taxpayers without the documentation necessary to claim a refund. The IRS therefore created a "safe harbor" for these taxpayers. To receive the safe-harbor standard amount, a taxpayer must demonstrate that he paid all taxes billed by the service provider during the relevant period, and that he had not received, requested, or filed a claim for the credit or refund. The standard amount for individuals ranges from $30 to $60, with an interest component governed by 26 U.S.C. § 6611. Businesses and other entities can also present minimal documentation to claim a safe-harbor refund based on an estimate of the taxes actually paid during the refund period. To calculate the refund amount, businesses must submit two monthly telephone bills from 2006 (rather than a bill for each month during the entire relevant period).

The IRS implemented an outreach strategy to notify taxpayers of this administrative refund mechanism. As part of this strategy, the IRS issued at least 22 news releases and eight internet publications entitled "Tax Tips," and disseminated refund information via more than 4,000 articles and interviews in magazines and various media outlets, collec-

tively estimated to reach over 88 million readers. The IRS also launched a website that explains how to obtain a refund, which millions of taxpayers have viewed. A similar explanation was incorporated into the "What's New" section of the 2007 Instructions for IRS Tax Forms 1040, 1040A, and 1040EZ. The IRS also partnered with software developers to ensure that popular tax preparation products, such as TurboTax and TaxCut, included information regarding the refund. Finally, the IRS collaborated with 65 national partners and more than 300 community-based coalitions to raise awareness of the refund. By April 26, 2012, these efforts had generated refunds of approximately $4.33 billion to roughly 100,168,030 million individual taxpayers, and of over $1.45 billion to 809,354 businesses. Approximately $7.21 billion in erroneously collected excise taxes, however, has not been refunded.[2]

On April 5, 2012, the IRS released Announcement 2012–16, 2012–18 I.R.B. 876, establishing a cutoff date of July 27, 2012, for requesting refunds. The Announcement states:

The Internal Revenue Service reminds and encourages taxpayers to timely request a Telephone Excise Tax Refund if they have not already done so. Since the Service stopped collecting the tax on long distance service in 2006, it has administered a simplified procedure for taxpayers to request a refund of excise taxes paid under section 4251 on nontaxable services that were billed after February 28, 2003, and before August 1, 2006. Taxpayers have until July 27, 2012, to request refunds of the telephone excise tax.

Based on recent litigation, the validity of the notice that outlines the procedures under which a taxpayer may request a refund of telephone excise tax has been called into question. While the litigation continues, in the interest of providing certainty to taxpayers, if the taxpayer chooses to request a refund, the Internal Revenue Service will process and honor requests that are made

---

**2.** Plaintiff alleges that $13 billion of communications excise tax was erroneously collected. Pl.'s Mot. for Class Certification ("Pl.'s Mot.") 5. As of April 26, 2012, the Government has refunded a total of $5,781,128,482.90, leaving $7,218,871,518.10 not refunded. Def.'s Status Report (May 1, 2012).

on or before July 27, 2012. Taxpayers should make their requests on the appropriate 2006 income tax return.

. . .

The Service will not process refund requests submitted after July 27, 2012.[3]

On April 5, 2012, the Government released Announcement 2012–16, 2012–18 I.R.B., announcing that "[t]he Service will not process refund requests submitted after July 27, 2012." Soon after, on April 10, 2012, the United States District Court for the District of Columbia held that the IRS failed to comply with the Administrative Procedure Act's notice-and-comment procedures and prospectively vacated Notice 2006–50. *In Re Long–Distance Telephone Service Federal Excise Tax Refund Litig.,* 853 F.Supp.2d 138 (D.D.C.2012). On May 1, 2012, this Court held a status conference to discuss the impact of those developments on this case.

### Discussion

In its third motion for class certification, RadioShack moves the Court to certify the following class:

Each individual or business that: (1) paid the Federal communications excise tax under section 4251 ("Communications Excise Tax" or "Tax") with respect to charges for toll telephone services that did not vary based on distance and charges for services that Defendant otherwise determined were not taxable (referred to herein collectively as "Non–Taxable Telephone Services"); (2) did not receive a refund of the entire amount of such tax, plus interest on such tax, from the Internal Revenue Service ("IRS"); and (3) satisfies the jurisdictional requirements for pursuing a tax refund and overpayment interest in the Court of Federal Claims at the time that individual or business opts-in to the Class.

Pl.'s Mot. 1 (footnotes omitted).[4] RadioShack concedes that class members for whom it seeks certification have not all filed refund claims with the IRS. Pl.'s Am. Compl. ¶ 11.

Plaintiff represents that notice can be provided to potential class members by including a notice in the telephone bills issued to current telephone users. Pl.'s Mot. 28–29. Plaintiff suggests that "Defendant has vast resources, including billions of dollars of erroneously collected Communication Excise Taxes, that can be used to fund any administrative effort." *Id.* at 28.

At oral argument on this motion, RadioShack moved the Court, in the alternative, to certify a class only with respect to claims for unpaid statutory interest on communication excise tax refunds. Specifically, Plaintiff proposed the following class:

Each taxpayer that (1) paid the Federal Communications Excise Tax under section 4251 with respect to charges for toll telephone services that did not vary based on distance and charges for services that Defendant otherwise determined were not taxable; (2) is entitled to statutory interest with respect to the overpayment of such tax pursuant to section 6611(a); and (3) has not yet received the full amount of such statutory interest from the IRS.

Pl.'s Supplemental Br. in Supp. of Pl.'s Mot. ("Pl.'s Supplemental Br.") 25–26.

 This Court has jurisdiction to consider tax refund suits under 28 U.S.C. § 1491(a)(1). *Ontario Power Generation, Inc. v. United States,* 369 F.3d 1298, 1301–02 (Fed.Cir.2004); *Shore v. United States,* 9 F.3d 1524, 1525 (Fed.Cir.1993); *Hinck v. United States,* 64 Fed.Cl. 71, 74–76 (2005), *aff'd,* 446 F.3d 1307 (Fed.Cir.2006). However, this Court's jurisdiction is limited to "the extent to which the United States has waived its sovereign immunity." *Inter–Coastal Xpress, Inc. v. United States,* 296 F.3d 1357, 1365–66 (Fed.Cir.2002) (quoting *Myers v. United States,* 50 Fed.Cl. 674, 682 (2001)) (internal quotation marks omitted). With respect to tax refund suits, the United States has waived its sovereign immunity only as

---

3. After the District Court for the District of Columbia vacated Notice 2006–50, the IRS opted to honor the July 27, 2012 refund request deadline announced in Announcement 2012–16, 2012–18 Internal Revenue Bulletin. Tr. 8–9 (May 1, 2012).

4. The Court denied Plaintiff's previous motions for class certification while it adjudicated Defendant's motion to dismiss Plaintiff's 1996 claim as time-barred and the Federal Circuit considered that issue on appeal. *See RadioShack Corp.,* 82 Fed.Cl. at 155, *aff'd,* 566 F.3d at 1358.

articulated in the Internal Revenue Code. *See United States v. Williams,* 514 U.S. 527, 532–35, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995); *United States v. Dalm,* 494 U.S. 596, 610, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *Flora v. United States,* 362 U.S. 145, 157–58, 176–77, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

Section 7422(a) of the Internal Revenue Code bars a taxpayer from filing a suit for refund unless a claim for refund has been duly filed with the IRS in accordance with § 6511. *Computervision Corp. v. United States,* 445 F.3d 1355, 1363–64 (Fed.Cir. 2006); *Chicago Milwaukee Corp. v. United States,* 40 F.3d 373, 374 (Fed.Cir.1994), cert. den., 525 U.S. 932, 119 S.Ct. 342, 142 L.Ed.2d 282 (1998) (stating that Section 7422(a) waives sovereign immunity with respect to tax refund suits "provided the taxpayer has previously filed a qualifying administrative refund claim" with the IRS).

■ Specifically, to maintain a tax refund suit in this Court, a taxpayer must satisfy the requirements of 26 U.S.C. § 7422(a), which provides:

**No suit prior to filing claim for refund.** No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

The Supreme Court explained in *United States v. Clintwood Elkhorn Mining Company,* that it "[could not] imagine what language could more clearly state that taxpayers seeking refunds of unlawfully assessed taxes must comply with the Internal Revenue Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim." 553 U.S. 1, 7, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008). Section 7422(a) unambiguously indicates that the administrative exhaustion requirement is a necessary prerequisite for every taxpayer who brings a tax refund suit in this Court, and applies even where the taxpayer was not required to file a tax return. *See RadioShack,* 566 F.3d at 1361–62 (finding that the limits set forth in 26 U.S.C. §§ 6511 and 7422 applied to the communications excise tax because the carrier was required to file a tax return—even if individual telephone-service customers were not).

■ A taxpayer must file a tax refund claim with the IRS either: (1) three years from the time the return was filed; or (2) two years from the time the tax was paid (whichever period expires later); or (3) if the taxpayer did not file a tax return within two years from the time the tax was paid. 26 U.S.C. § 6511. In addition, 26 U.S.C. § 6532(a)(1) expressly precludes a taxpayer from "beginning" a refund suit before the statutorily established time has expired for the Secretary to decide that administrative refund claim. Section 6532(a)(1) provides:

*No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.*

(emphasis added).

In sum, under the clear language of the Internal Revenue Code, this Court has jurisdiction over a tax refund suit only if the taxpayer has exhausted administrative remedies before bringing suit.

### RadioShack Has Failed to Establish that this Court Has Jurisdiction over the Refund Claims of Putative Class Members

Ignoring the mandatory pre-lawsuit exhaustion requirements in the Internal Revenue Code, Plaintiff seeks to certify a class of taxpayers that "satisfies the jurisdictional requirements for pursuing a tax refund and overpayment interest in the Court of Federal Claims *at the time that individual or busi-*

*ness opts-in to the Class."* Pl.'s Mot. 1 (emphasis added). Plaintiff maintains that the Court has the authority to certify a proposed class whose members do not yet satisfy the jurisdictional exhaustion requirements on the theory that neither the filing of a class action complaint nor the certification of the class would "begin" a refund suit for a yet unnamed taxpayer plaintiff within the meaning of § 6532(a)(1). Thus, in Plaintiff's view, the Court would not exercise jurisdiction over the tax refund claims of putative class members until those members affirmatively opt in to the class, at which point they will have both begun their suit for purposes of § 6532(a)(1) and satisfied the jurisdictional prerequisites for a tax refund suit.

Plaintiff argues that *Bright v. United States,* 603 F.3d 1273 (Fed.Cir.2010) stands for the proposition that "absent class members begin their action in the opt-in class context on the date on which the absent class member opts-in to the class." Pl.'s Reply to Def.'s Supplemental Br. ("Pl.'s Reply") 3. The narrow question before the *Bright* court was whether the timely filing of a class action complaint tolled the statute of limitations for absent class members while the Court of Federal Claims considered certification of the proposed class. The *Bright* court answered this question in the affirmative. *Id.* at 1283. Plaintiff contends:

> As noted in *Bright,* while the Court in *American Pipe [& Const. Corp. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) ] held that the filing of a class action complaint "commences" the tolling of the period of limitations for absent class members, the Court did not hold that the filing of the class action complaint "commences" a suit for absent class members for purposes of applying the jurisdictional requirements.

Pl.'s Reply 7. Plaintiff reads *Bright* too broadly. *Bright* did not establish an overarching rule that class members need not satisfy threshold jurisdictional requirements applicable to any and all types of cases until they opt into the suit. In *Bright,* a Fifth Amendment taking suit, there was no administrative exhaustion requirement. Thus, *Bright's* tolling of the statute of limitations in a class action taking suit does nothing to whittle away the absolute, mandatory administrative exhaustion requirement for each and every tax refund action. *Bright* does not touch § 7422(a)'s "no suit prior to filing claim for refund" mandate.

■ The fact that the Court of Federal Claims has adopted an opt-in class action mechanism does not alter § 7422(a)'s mandatory exhaustion requirement, which is an express limitation on the waiver of sovereign immunity in tax refund suits. Rule 23, a procedural mechanism, does not modify the limitations of the Court's jurisdiction over tax refund actions. The Court "cannot, through its acknowledged rule-making power, expand its jurisdiction beyond the limits prescribed by Congress." *Bright,* 603 F.3d at 1283 (quoting *Rolls–Royce, Ltd. v. United States,* 364 F.2d 415, 419 (1966)) (internal quotation mark omitted).

■ Plaintiff's effort to have jurisdiction be determined at the time an individual class member opts into the class would fly in the face of both the Internal Revenue Code's exhaustion requirement and the fundamental precept that jurisdiction is determined at the time a suit is filed. The waiver of sovereign immunity expressed in the Internal Revenue Code, as in other statutes, must be strictly construed. *Fed. Nat'l Mortg. Ass'n v. United States,* 469 F.3d 968, 972 (Fed.Cir.2006). The Internal Revenue Code imposes jurisdictional prerequisites, which must be met by each individual taxpayer plaintiff before he files suit—not before he opts into a lawsuit that met jurisdictional prerequisites because another taxpayer with a different claim satisfied the exhaustion requirements. Simply stated, RadioShack's administrative tax refund claim is unique to RadioShack and cannot form the jurisdictional predicate to enable another taxpayer, who has not yet filed an administrative claim, to join in RadioShack's suit. As the Claims Court reiterated in *Saunooke v. United States,* "strict adherence to sovereign immunity mandates that this court cannot gain subject matter jurisdiction over a tax refund action until each member of the proposed class has paid his entire assessed deficiency and filed a timely claim

for refund pursuant to 26 U.S.C. § 7422(a)." 8 Cl.Ct. 327, 329–30 (1985).

■ Several federal courts have refused to certify classes in tax refund suits under Federal Rule of Civil Procedure 23 where the named plaintiffs did not show that all putative class members had met the jurisdictional prerequisites for tax refund suits at the time of the filing the complaint. *See, e.g., Oatman v. Dept. of Treasury–Internal Revenue Service*, 34 F.3d 787, 789 (9th Cir.1994) ("The district court lacks jurisdiction over claims for refunds pressed by any potential class members who have not satisfied the procedural requirements of 26 U.S.C. §§ 6532 and 7422.") (citation omitted); *Lewis v. Sandler*, 498 F.2d 395, 399–400 (4th Cir.1974) (denying class certification in part because neither the named plaintiff nor any class member alleged that he had filed an administrative refund claim before filing suit). A plaintiff taxpayer must file an administrative refund claim before filing suit in federal court. *Bartley v. United States*, 123 F.3d 466, 472 (7th Cir. 1997); *Heisler v. United States*, 463 F.2d 375, 375 (9th Cir.1972); *Appoloni v. United States*, 219 F.R.D. 116, 119 (W.D.Mich.2003) ("A taxpayer whose claim had neither been denied nor pending for at least six months at the time suit was filed would not be entitled to file suit … [and] could not properly be included in the class. . . ."); *McConnell v. United States*, 295 F.Supp. 605, 606 (E.D.Tenn.1969). These cases are grounded in the principle that potential plaintiffs seeking tax refunds cannot be included in a class action unless they have exhausted the administrative process prior to the filing of the lawsuit.

### *RadioShack's Complaint Does Not Constitute an Administrative Refund Claim*

In a curious alternative argument, RadioShack submits that its complaint in this action constitutes an informal refund claim for the yet-to-be-defined class sufficient to fulfill the jurisdictional prerequisites for all members of the putative class, and that Notice 2006–50 signifies the IRS's allowance of such refund claims.

■ A timely administrative refund claim that suffers from "purely formal defects" will

satisfy jurisdictional prerequisites, at least for purposes of timeliness, so long as the claim "fairly apprises the IRS of the basis for the claim" and its defects are later remedied by amendment. *Computervision Corp.*, 445 F.3d at 1364. However, a class representative's filing of a class action complaint in federal court clearly does not satisfy the jurisdictional administrative exhaustion requirements for all putative class members. *See In re Long–Distance Telephone Service Federal Excise Tax Refund Litig.*, 539 F.Supp.2d 281, 292 (D.D.C.2008), *aff'd in relevant part sub nom, Cohen v. United States*, 578 F.3d 1 (D.C.Cir.2009) ("[the] suggestion that the court treat [a] civil complaint as a substitute for a properly filed administrative refund claim deserves little comment beyond the observation that it is meritless"); *Disabled American Veterans v. United States*, 650 F.2d 1178, 1179 (Ct.Cl.1981) ("Filing a petition is not a satisfactory claim for refund.").

As such, the Court summarily rejects RadioShack's contention that its complaint constitutes an informal refund claim sufficient to satisfy the jurisdictional prerequisites for all potential class members.

### *RadioShack's Proposed Class Does Not Meet the Criteria for Class Certification*

Additionally, RadioShack has not established the requisites for class action suits in this Court. Rule 23 provides:

(a) **Prerequisites.** One or more members of a class may sue as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** A class action may be maintained if RCFC 23(a) is satisfied and if:

. . .

(2) the United States has acted or refused to act on grounds generally applicable to the class; and

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by class members; (C) [not used]; and (D) the likely difficulties in managing a class action.

The requirements of Rule 23 can be grouped into five categories: (i) numerosity, *i.e.*, the class is so large that joinder is impracticable; (ii) commonality, *i.e.*, the presence and predominance of common questions of law or fact and the treatment received by the class members at the hands of the Government; (iii) typicality, *i.e.*, that the named parties' claims are typical of the class; (iv) adequacy, *i.e.*, fair representation; and (v) superiority, *i.e.*, that a class action is the fairest and most efficient way to resolve the controversy. *See, e.g., Bigelow Trust v. United States*, 97 Fed.Cl. 674, 676 (2011); *Barnes v. United States*, 68 Fed.Cl. 492, 494 (2005). "These requirements are in the conjunctive; hence, the failure to satisfy any one of them is fatal to a class certification." *Bigelow Trust*, 97 Fed.Cl. at 676.

### Numerosity

■ Rule 23's numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." RCFC 23(a)(1). Speculation as to the number of potential class members involved is not sufficient to satisfy the requirements of Rule 23(a). *Fisher v. United States*, 69 Fed. Cl. 193, 198 (2006); *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y.2001) (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968)) ("Where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails."); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989); *Grimes v. Pitney Bowes, Inc.*, 100 F.R.D. 265, 269–70 (N.D.Ga.1983) ("[M]ere allegations of numerosity are insufficient to meet this prerequisite.").

■ Here, RadioShack has not met its burden of demonstrating that the prospective class would be so numerous that it would be impracticable to join all members. RadioShack has not shown that this Court has jurisdiction over a single member of the purported class beyond RadioShack. RadioShack can only speculate as to the number of "future" class members that will one day file a refund claim, fulfill the jurisdictional requirement of § 7422(a), and opt into the class. As such, RadioShack has failed to demonstrate numerosity, which, standing alone, is sufficient to deny class certification.

### The Court Denies Certification of a Class Seeking Only Unpaid Statutory Interest

In the alternative, in the event this Court concludes it lacks jurisdiction over claims of purported class members who have not filed administrative refund claims, RadioShack moves to certify a class of taxpayers who do not seek refunds in this lawsuit and instead only seek interest on the tax they paid. Plaintiff characterizes this class as follows:

Each taxpayer that (1) paid the Federal Communications Excise Tax under section 4251 with respect to charges for toll telephone services that did not vary based on distance and charges for services that Defendant otherwise determined were not taxable; (2) is entitled to statutory interest with respect to the overpayment of such tax pursuant to section 6611(a); and (3) has not yet received the full amount of such statutory interest from the IRS.

Pl.'s Supplemental Br. 25. Plaintiff does not limit this proposed class to taxpayers who received a refund through the administrative process, stating "[w]hen notice is effectuated, class members may also request the Commissioner to pay the Communications Excise Tax refund to which the members are entitled." *Id.* at 28.

■ There are several insuperable obstacles to granting certification of a class seek-

ing only interest here. First, as a matter of law, in order to demonstrate entitlement to interest under the Internal Revenue Code, a taxpayer must prove, and the IRS or a court must determine, that there has been an overpayment of tax. 26 U.S.C. § 6611 (2011). A plaintiff cannot simply allege that he made an overpayment and is owed interest on that alleged overpayment. Under § 6611(a), "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621." An overpayment is "any payment in excess of that which is properly due," and a taxpayer must establish that there was an overpayment. *See General Elec. Co. & Subsidiaries v. United States*, 384 F.3d 1307, 1312 (Fed.Cir.2004) (citation omitted); *Cherbanaeff v. United States*, 77 Fed.Cl. 490, 500 (2007) ("[t]he payment of interest is triggered by the 'overpayment' by a taxpayer."). The Court can entertain claims for statutory interest only when it has already been determined that a plaintiff has a valid underlying tax refund claim—which also requires a showing that the plaintiff actually paid the tax at issue. *Cherbanaeff*, 77 Fed.Cl. at 500 ("This ... court may exercise jurisdiction over claims solely for statutory interest where it has already been established that there was an 'overpayment' by the taxpayer.") (citing *Brown & Williamson Ltd. v. United States*, 231 Ct.Cl. 413, 688 F.2d 747 (1982)).

There is a jurisdictional barrier to Plaintiff's "interest-only" claim. In order to demonstrate an overpayment in this forum, taxpayers must first file administrative claims for this Court to have jurisdiction to entertain their judicial claims for a refund. A putative class cannot invoke the jurisdiction of this Court to recover only interest without exhausting the mandatory administrative refund process required for a determination that there has been an "overpayment" that warrants interest. Section 7422(a)'s mandate, "... no suit prior to filing a claim for refund ..." applies equally to a lawsuit for interest on an overpayment authorized in § 6611(a).

■ RadioShack concedes that this Court has declined to exercise jurisdiction over a taxpayer's claim solely for statutory interest in cases where there was no prior determination that an overpayment occurred. Pl.'s Supplemental Br. 27. Instead, RadioShack argues that Notice 2006–50 constitutes a concession by the Commissioner that an overpayment has occurred. Plaintiff's argument fails because Notice 2006–50 is not a determination that a party is entitled to a refund due to an overpayment. The Notice itself states that the "Commissioner agrees to credit or refund the amounts paid for nontaxable service *if* the taxpayer requests the credit or refund *in the manner prescribed* in this notice." IRS Notice 2006–50, 2006–25 I.R.B. 1141 § 5(a) (emphasis added). Notice 2006–50 is merely an invitation for individual taxpayers to file a *claim* for a refund. *Cf. Rosenberg v. United States*, 72 Fed.Cl. 387, 392 (2006), *aff'd*, 223 Fed.Appx. 985 (Fed.Cir. 2007) (dismissing plaintiff's claim that IRS could have waived the jurisdictional requirements of 26 U.S.C. § 7422(a) by publishing Notice 2006–50). The Internal Revenue Code requires taxpayers to file an administrative refund claim before filing suit in court—regardless of whether the IRS publishes an Internal Revenue Bulletin. The issuance of this generic notice is not a determination that any individual taxpayer actually paid the communications excise tax.

RadioShack also argues that the Commissioner's act of scheduling an overassessment constitutes an official allowance of refund claims. Pl.'s Supplemental Br. 19. Scheduling an overassessment is the accounting mechanism that the IRS uses to adjust the amount of tax that should have been imposed, and it is independent of any actual taxpayer's payments. *See General Instrument Corp. v. United States*, 33 Fed.Cl. 4 (1995). Importantly, the scheduling of an overassessment does not remove the statutory requirement that a taxpayer prove that the tax was actually paid. The burden remains on each plaintiff to prove a specific overpayment of tax. *See United States v. Wurts*, 303 U.S. 414, 417–18, 58 S.Ct. 637, 82 L.Ed. 932 (1938) (explaining that the signature of the Commissioner on a schedule of overassessment does not finally establish a claimant's right to a refund and does not

preclude further investigation and consideration of the refund claim).

In any event, because Plaintiff has not identified a single putative class member who has demonstrated an overpayment of tax and who desires to file a lawsuit to recover only the interest on the tax, class certification is not warranted.

### Conclusion

RadioShack's Third Motion for Class Certification is **DENIED.** The parties shall file a joint status report on or before **July 17, 2012,** apprising the Court of proposed further proceedings in this litigation.