126 T.C. No. 2

UNITED STATES TAX COURT

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY AND SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1859-01.                    Filed January 17, 2006.


        P filed a Motion Pursuant to Rule 261 to
Redetermine Interest on Overpayment.  The issue raised
in P's motion is whether accrued interest on P's
overpayment as of Dec. 31, 1994, is subject to the
regular rate of interest or the lower rate of interest
provided by sec. 6621(a)(1), I.R.C., beginning on Jan.
1, 1995 (the GATT rate).  R's position that the GATT
rate applies was previously sustained by the Court of
Federal Claims and the Court of Appeals for the Federal
Circuit in <u>Gen. Elec. Co. v. United States</u>, 384 F.3d
1307 (Fed. Cir. 2004), affg. in part and remanding in
part 56 Fed. Cl. 488 (2003).  See also <u>Exxon Mobil
Corp. v. Commissioner</u>, 126 T.C. ___ (2006).

        The parties also dispute whether any portion of
the overpayment remains subject to the $10,000
threshold as provided in sec. 6621(a)(1), I.R.C.

        <u>Held</u>:  We hold that the GATT rate applies to the
accrued interest owed P as of Dec. 31, 1994.

      <u>Held</u>, <u>further</u>, the entire overpayment of tax remaining is subject to the GATT rate since an amount in excess of the $10,000 threshold was refunded to P on the due date of P's return for the taxable year in question.

<u>Jerome B. Libin</u>, <u>James V. Heffernan</u>, and <u>Mary E. Monahan</u>, for petitioner.

<u>Robert Morrison</u> and <u>Jan E. Lamartine</u>, for respondent.

OPINION

GOEKE, <u>Judge</u>:  Before us is petitioner's motion under Rule 261[1] seeking a higher rate of interest on petitioner's overpayment.  The difference between petitioner's interest computation method and respondent's method stems from a difference of view regarding the effect of a 1994 amendment to section 6621(a)(1), the so-called GATT amendment.  That amendment reduced the rate of overpayment interest applicable to that portion of a corporate tax overpayment that exceeds $10,000 for purposes of determining interest after December 31, 1994.  Because we hold that the reduced rate of interest effective after December 31, 1994, applies to interest accrued on petitioner's overpayment as of that date, petitioner's motion will be denied.

---

      [1]Rule references are to the Tax Court Rules of Practice and Procedure.  Unless otherwise indicated, all section references are to the Internal Revenue Code as amended.

## Background

Respondent issued a notice of deficiency with respect to petitioner's 1987 taxable year. Petitioner filed a petition and alleged that it had made an overpayment of tax for 1987 in the amount of $56,900,746. On December 19, 2002, this Court held that petitioner had made such an overpayment for 1987. State Farm Mut. Auto. Ins. Co. v. Commissioner, 119 T.C. 342 (2002), affd. 105 Fed. Appx. 67 (7th Cir. 2004). The Court of Appeals for the Seventh Circuit affirmed this Court's decision on June 29, 2004. No petition for certiorari was filed by or on behalf of petitioner, and the decision of this Court became final on September 27, 2004. See sec. 7481(a)(2)(A).

On December 15, 2004, respondent issued two checks aggregating $113,418,286.92 payable to petitioner. The checks ostensibly covered the amount of petitioner's overpayment plus statutory interest thereon. Petitioner was furnished with a copy of respondent's computations supporting the total amount of the checks. In its motion, petitioner takes issue with respondent's computation of the overpayment interest payable to petitioner because respondent computes interest using a reduced rate set forth in section 6621(a)(1), which is commonly referred to as the GATT rate after 1994 in compounding the interest that had accrued

prior to 1995.[2]  Petitioner asserts the regular rate of interest should continue to apply to the previously accrued interest after January 1, 1995.

As computed by petitioner, the overpayment interest that should have been paid to petitioner is $65,288,523.47, which is $4,375,689.66 greater than the $60,912,833.81 computed by respondent as the interest payable.

Respondent's position, which was successfully asserted in Gen. Elec. Co. v. United States, 384 F.3d 1307 (Fed. Cir. 2004), affg. in part and remanding in part 56 Fed. Cl. 488 (2003), is that the lower GATT rate should be applied as of January 1, 1995, in calculating the compound interest on any previously accrued interest attributable to that portion of an overpayment in excess of $10,000.  Such interest would have been compounded at the regular corporate overpayment rate up to that date.

Petitioner timely filed a motion pursuant to section 7481(c) and Rule 261 for a redetermination of the interest owed to it on

---

[2]The GATT amendment was enacted by the Uruguay Round Agreements Act, Pub. L. 103-465, sec. 713, 108 Stat. 4809, 5001 (1994).  The amendment was adopted as a revenue raiser in connection with the General Agreement on Tariffs and Trade (GATT). Interest computed pursuant to the amendment is generally referred to as GATT interest and the revised interest rate as the GATT rate.

the overpayment of tax previously determined by this Court with respect to its taxable year 1987, and the parties have filed memoranda on the issue raised.

Petitioner also disputes that $10,000 of the overpayment due on the effective date should receive the regular rate of interest rather than the GATT rate. Respondent counters that the refunding of more than $10,000 of the original overpayment on the due date of petitioner's return relieves the need for any further application of the $10,000 threshold in section 6621(a)(1).

<u>Discussion</u>

Interest on overpayments is authorized by section 6611(a) at the rate established in section 6621. Section 6622(a) requires that the overpayment interest be compounded daily. The issue before us concerns whether the GATT rate change in corporate overpayment interest applies in computing interest on the interest accrued before the effective date. This change results in 1.5 percent less interest after December 31, 1994. The following sentence was added to section 6621(a)(1) by the Uruguay Round Agreements Act, Pub. L. 103-465, sec. 713(a), 108 Stat. 5001 (1994):

> To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3)) exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points."

The effective date of this change is described in the Uruguay Round Agreements Act, sec. 713(b), 108 Stat. 5002:

> (b)  Effective Date.-- The amendment made by this section shall apply for purposes of determining interest for periods after December 31, 1994.

Section 6621(a)(1), effective after December 31, 1994, provides as follows:

> SEC. 6621.  DETERMINATION OF RATE OF INTEREST.
>
> (a)  General Rule.--
>
> > (1)  Overpayment rate.--The overpayment rate established under this section shall be the sum of
> >
> > > (A) the Federal short-term rate determined under subsection (b), plus
> > >
> > > (B) 3 percentage points (2 percentage points in the case of a corporation)
>
> To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

By virtue of its placement in section 6621 and the effective date description, this was a change in the rate of interest. Petitioner maintains the scope of this change was limited to the overpayment itself, not the interest on accrued interest.  In addressing this question, we first examine the precedent in the Court of Appeals for the Federal Circuit.

The General Electric Case

In Gen. Elec. Co. v. United States, supra, the entire amount of the taxpayer's (General Electric's) 1978 overpayment of $15.5 million had been refunded or credited in 1988, but $810,000 of accrued interest on the 1978 overpayment was not credited and remained unpaid until 2002.  The taxpayer's position was that the unpaid interest should continue to be compounded at the regular rate until paid.  The United States argued that as of January 1, 1995, the GATT rate replaced the regular rate for purposes of compounding interest.  The Court of Federal Claims held that the full amount of General Electric's pre-1995 accrued interest was subject to the GATT rate as of January 1, 1995.  Gen. Elec. Co. v. United States, 56 Fed. Ct. 488 (2003).  The Court of Appeals for the Federal Circuit affirmed the primary holding, but remanded the case for a determination whether the taxpayer was entitled to any additional interest at the regular rate after January 1, 1995, on the interest that had accrued prior to January 1, 1995, on the first $10,000 of its overpayment.  Gen. Elec. Co. v. United States, 384 F.3d at 1313.

The Court of Appeals for the Federal Circuit initially addressed the meaning of the term "overpayment" as follows:

> We agree with GE and the trial court that the term
> "overpayment," as used in the Internal Revenue Code,
> does not ordinarily include interest that is earned on
> the overpayment. We do not agree with GE, however, that
> the statutory provision that preserves the regular
> interest rate for small corporate overpayments of

> $10,000 or less should be interpreted to mean that the <u>interest</u> on very large <u>overpayments</u> should accrue <u>interest</u> at the rate Congress reserved for small <u>overpayments</u>. We think it highly unlikely that Congress intended the exception to the GATT rate for small <u>overpayments</u> to have such dramatic potential consequences for <u>overpayments</u> vastly larger than the modest <u>overpayments</u> of $10,000 or less that are eligible for the regular rate. [Emphasis supplied.]

<u>Id.</u> at 1310-1311.

After noting that section 6611 "authorizes the allowance of interest on any 'overpayment'" and that section 6611 "dictates that interest shall be paid 'at the overpayment rate established under section 6621'", <u>id.</u> at 1308, the Court of Appeals for the Federal Circuit stated that because sections 6611 and 6621 are "integrally related * * * the term 'overpayment' must mean the same thing in the two sections." <u>Gen. Elec. Co. v. United States</u>, <u>supra</u> at 1311. This led the court to conclude that "section 6611 requires us to reject GE's theory of the case". <u>Id.</u> at 1311-1312.

As we shall discuss, petitioner believes this analysis by the Court of Appeals for the Federal Circuit is flawed because "overpayment" does not include interest compounded under section 6622.

Petitioner challenges the holding of the Court of Appeals for the Federal Circuit by arguing that the phrase "overpayment of tax" in section 6621(a) limits the scope of the change in corporate interest rates to the overpayment itself, thus allowing

accrued interest on the overpayment to continue to receive the regular interest rate, which is always 1.5 percent higher.

The role of the phrase "overpayment of tax" is central to this dispute. We find the phrase in question is a device to describe the occasion when the GATT rate is triggered for all interest computational purposes including compounding under section 6622. We do not read the phrase "overpayment of tax" as a limitation on the scope of the applicability of the changed rate once triggered. Given the role of section 6621 in the statutory scheme for interest, we must reject petitioner's construction.

The role of section 6621 is to set interest rates which are not constant but may change quarterly. Sec. 6621(b); sec. 301.6621-1(a)(3), Proced. & Admin. Regs. The GATT rate change is described in public law as a change for purposes of determining interest after December 31, 1994. Uruguay Round Agreements Act, sec. 713, 108 Stat. 5001. This change from the regular rate applies on its face to all applications of interest after December 31, 1994, in situations when the GATT rate is triggered. The language added to section 6621(a) triggers a change in interest rate.

Sections 6611, 6621, and 6622 constitute the statutory scheme to authorize interest on overpayments, set the rate of interest, and provide for the method of computation,

respectively. Each section has a distinct role in an integrated scheme for overpayment interest.

Petitioner would read the sections in isolation to separate the overpayment from the accrued interest. This reading would have section 6621 accomplish more than simply set the interest rate. We do not interpret the change to section 6621 to bifurcate the interest rate for compounding from the overpayment interest rate. Further, the legislative history of the change and the description of the effective date in section 713(b) of the Uruguay Round Agreements Act do not support petitioner's interpretation. Both the legislative history accompanying the 1994 amendment and the effective date language discuss a change in the rate of interest without distinguishing between the rate paid on an overpayment and the rate compounded.[3] The legislative history does not state that the rate was meant to be bifurcated between interest on the overpayment itself and interest on accrued interest. We find that the importance of such a distinction leads to the conclusion that the omission was intentional. This conclusion is supported by Exxon Mobil Corp. v. Commissioner, 126 T.C. __ (2006) (slip op. at 12), filed today, finding that a "bifurcation in the interest to be paid on

---

[3]See S. Rept. 103-412, at 11 (1994) ("The outlay reductions in Title VII derive from * * * reducing the interest rate * * * with respect to large corporate tax overpayments." (Emphasis added.)). The language in the effective date was discussed previously.

the tax overpayment itself and the interest to be paid on interest is not found in the statute."

Petitioner further challenges the Court of Appeals for the Federal Circuit's position that section 6611 authorizes the payment of interest by explaining that only simple interest was paid before section 6622 became law. Interest on interest is a function of the compounding provided by section 6622; however, the interest that is compounded originates as the interest authorized by section 6611 on an overpayment, and the rate of both is set by section 6621. One common component of the interest rate applicable to all overpayments is the Federal short-term rate. Sec. 6621(a)(1)(A). The Federal short-term rate used in section 6621(a)(1)(A) is redetermined on a quarterly basis. Sec. 6621(b). A fluctuation in the Federal short-term rate affects the rate applicable to corporate overpayments under both sections 6611 and 6622. Similarly, there is no logical reason that requires a different result regarding the GATT rate change, effective after December 31, 1994.

Petitioner points to the refund estimates prepared for Congress at the time the GATT rate was adopted to support its position. Petitioner asserts that in these estimates accrued interest was not subject to the lower GATT rate. Petitioner also argues that respondent initially applied the GATT rate only to the overpayment, not the accrued interest, and now respondent has

changed his practice. While both these circumstances may evidence confusion about how the change would be implemented, we do not find that either point overcomes the logical meaning of the statutory language itself.

The remaining issue is whether the $10,000 threshold is to be applied to the highest total overpayment that previously existed or the amount at the effective date of the statutory change.

Much of the controversy in Gen. Elec. Co. v. United States, 384 F.3d 1307 (Fed. Cir. 2004) centered on the question whether the term "overpayment" as used in section 6621(a)(1) referred to a single, cumulative amount for a particular taxable year (the amount by which the tax paid for the year exceeded the tax liability for the year before any credits or refunds) or referred instead to the amount owed to the taxpayer at a particular point in time (e.g., the amount of any excess tax paid for a year that remained unrefunded and uncredited on January 1, 1995). Although the two amounts could be the same in any given case, the issue was important in Gen. Elec. Co. because the "single, cumulative amount" of its 1978 overpayment had been fully refunded or credited before January 1, 1995, and the only "amount owed" to it on that date was previously accrued interest, which the parties agreed was not part of the "overpayment" as that term is used in section 6621(a)(1) for purposes of defining the $10,000

threshold. The taxpayer argued since there was no "overpayment" on January 1, 1995, its overpayment was less than $10,000, and the regular rate applied under section 6621(a)(1). The Court of Appeals for the Federal Circuit agreed with the Court of Federal Claims that the term "overpayment" as used in section 6621(a)(1) refers to a single, cumulative amount, not to whatever amount of overpayment may be owed to the taxpayer at a particular point in time.[4] This point is important in the present case regarding the second issue raised by petitioner's motion, whether, despite the prior refund, $10,000 of the overpayment due on the effective date should receive the regular rate of interest rather than the GATT rate.

We agree with the analysis of the Court of Appeals for the Federal Circuit which requires that the threshold is met based on the cumulative overpayment amount for the taxable year, not the specific amount remaining at the effective date after credits had been previously provided. Gen. Elec. Co. v. United States, 384 f.3d at 1308-1309.[5] Accordingly, we will deny both aspects of

---

[4]The Court of Appeals for the Federal Circuit stated that "we agree with the trial court's analysis" that the amount of a tax overpayment once established is "fixed" and "does not vary as the government makes refunds or credits." Gen. Elec. Co. v. United States, 384 F.3d 1307, 1308-1309 (Fed. Cir. 2004), affg. in part and remanding in part 56 Fed. Cl. 488 (2003).

[5]Since there was never any accrued interest on the first $10,000 of petitioner's overpayment, we are not faced with the allocation issue that required a remand by the Court of Appeals

(continued...)

petitioner's motion.

To reflect the foregoing,

An appropriate order will be
issued.

---

[5](...continued)
for the Federal Circuit in Gen. Elec. Co. v. United States,
supra.