126 T.C. No. 3

UNITED STATES TAX COURT

EXXON MOBIL CORPORATION AND AFFILIATED COMPANIES, f.k.a. EXXON
CORPORATION AND AFFILIATED COMPANIES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18618-89, 18432-90          Filed January 17, 2006.
            23331-95.

Held: Under secs. 6611, 6621(a)(1) and 6622,
petitioners' outstanding Dec. 31, 1994, cumulative
accrued overpayment interest balance of $1.6 billion
relating to the years involved herein accrues further
compound interest after Dec. 31, 1994, at the reduced
interest rate applicable to large corporate
overpayments, not at the regular interest rate. Gen.
Elec. Co. v. United States, 56 Fed. Cl. 488 (2003),
affd. 384 F.3d 1307 (Fed. Cir. 2004), and State Farm
Mut. Auto. Ins. Co. v. Commissioner, 126 T.C. ___
(2006), followed. Petitioners' claim for an additional
$450 million in accrued interest is denied.

<u>Robert L. Moore II</u>, <u>Thomas D. Johnston</u>, and <u>Kevin Kenworthy</u>, for petitioners.

<u>Robert M. Morrison</u>, for respondent.

OPINION

SWIFT, <u>Judge</u>:  This matter is before us on petitioners' motions under section 7481(c) and Rule 261 for the Court to determine the correct amount of overpayment interest due petitioners.[1]

The primary issue presented is whether petitioners' cumulative accrued overpayment interest balance outstanding on December 31, 1994, of approximately $1.6 billion (relating to petitioners' consolidated Federal income taxes for 1979 through 1985) accrues compound interest thereafter until paid to petitioners at the regular corporate overpayment interest rate, as petitioners contend, or at the reduced overpayment interest rate applicable to large corporate overpayments, as respondent contends.

In its discussion of essentially the same question of statutory interpretation presented herein, the Court of Appeals for the Federal Circuit in <u>Gen. Elec. Co. v. United States</u>, 384 F.3d 1307, 1309 (Fed. Cir. 2004), explained:

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

> Because the new statutory language [in section 6621] was enacted as part of the statute that gave effect to the agreements reached at the Uruguay Round of Multilateral Trade Negotiations conducted under the auspices of the General Agreement on Tariffs and Trade ("GATT"), the lower corporate overpayment interest rate of 0.5 percent set forth in the 1994 amendment is referred to as the "GATT rate." The higher interest rate on corporate overpayments that applied to all corporate overpayments prior to the 1994 Act and [that applies to corporate overpayments of $10,000 and less] is referred to as the "regular rate." * * *

We use the same nomenclature herein.

Due to the 1.5-percent differential under section 6621(a)(1) between the regular rate and the GATT rate, if the higher regular overpayment interest rate applies to petitioners' December 31, 1994, overpayment interest balance, there will accrue, after December 31, 1994, additional interest in favor of petitioners of approximately $450 million.

## Background

The parties have stipulated the facts relevant to the instant motions.

Petitioners' corporate Federal income tax returns for 1979 through 1985 were timely filed with respondent. On each of those tax returns as filed, petitioners reported tax overpayments in excess of $10,000 and claimed refunds or credit transfers of the tax overpayments, which respondent allowed and credited in favor of petitioners.

Upon audit, respondent determined substantial deficiencies in petitioners' Federal income taxes for 1979 through 1985.

During the course of respondent's audits, petitioners' administrative appeals, and the litigation of these and related cases,[2] petitioners made a number of substantial advance payments to respondent of taxes and of interest with respect to each of the tax deficiencies determined by respondent against petitioners for 1979 through 1985.

As of the January 1, 1995, effective date of the above GATT amendment to section 6621(a)(1), with respect to each of the years 1979 through 1985, petitioners had received from respondent refunds of tax overpayments far in excess of $10,000, and petitioners still had outstanding with respondent overpayments of tax in excess of $10,000.

After the litigation and after settlement between the parties of many issues, all underlying tax issues relating to the Federal income taxes of petitioners for 1979 through 1985 have

---

[2] See, e.g., Exxon Corp. v. Commissioner, T.C. Memo. 1993-616, affd. sub nom. Texaco, Inc. v. Commissioner, 98 F.3d 825 (5th Cir. 1996) (involving the allocation of profits from sales of Saudi Arabian crude oil); Exxon Corp. v. Commissioner, 102 T.C. 721 (1994) (involving the computation of percentage depletion relating to the sale of natural gas); Exxon Corp. v. Commissioner, T.C. Memo. 1999-247 (involving the deductibility of interest relating to contested tax deficiencies); Exxon Corp. v. Commissioner, 113 T.C. 338 (1999) (involving the credibility of petroleum revenue tax paid to the United Kingdom); Exxon Mobil Corp. v. Commissioner, 114 T.C. 293 (2000) (involving the deductibility of estimated dismantlement, removal, and restoration costs relating to the Prudhoe Bay, Alaska, oil field).

been resolved, and decisions have been entered in each of these consolidated cases.

## Discussion

We start our analysis of the legal question before us with the language and structure of the statute itself. <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 835 (1990); <u>United States v. Ron Pair Enters, Inc.</u>, 489 U.S. 235, 241 (1989); <u>Anderson v. Commissioner</u>, 123 T.C. 219, 233 (2004), affd. 137 Fed. Appx. 373 (1st Cir. 2005).

Section 6611 provides that taxpayers are to be allowed and are to be paid interest on any overpayments in respect of any internal revenue tax at the rate established under section 6621.

Section 6622 provides that in computing the amount of interest required to be paid under section 6611, the interest will be compounded daily.

Section 6621 provides that the rate of interest to be paid by respondent to corporate taxpayers on overpayments shall be the sum of the Federal short-term interest rate, as calculated according to the formula set forth in section 6621(b), plus 2 percentage points, but plus only 0.5 percentage point where a corporate overpayment for a year is in excess of $10,000.

The relevant text of section 6621(a)(1) provides as follows:

> (1) Overpayment rate.--The overpayment rate established under this section shall be the sum of --

(A) the Federal short-term rate determined under subsection (b), plus

(B) 3 percentage points (2 percentage points in the case of a corporation).

To the extent that an overpayment of tax by a corporation for any taxable period * * * exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".[3]

The flush language of section 6621(a)(1), reflecting the reduced overpayment interest rate for large corporate overpayments for periods after December 31, 1994, was added to the Code in 1994 as part of the Uruguay Round Agreements Act (GATT), Pub. L. 103-465, sec. 713(a), 108 Stat. 5001-5002 (1994). In accordance with the terminology used in Gen. Elec. Co. v. United States, 384 F.3d at 1309, we refer to the amendment of section 6621(a)(1) as the GATT amendment.

The effective date of the GATT amendment was provided in section 713(b), as follows:

(b) Effective Date.--The amendment made by this section shall apply for purposes of determining interest for periods after December 31, 1994.

---

[3] The version of the statute quoted in the text is the current version, reflecting changes not relevant herein made by the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105-34, sec. 1463(a), 111 Stat. 1057; TRA 1997, sec. 1604(b)(1), 111 Stat. 1097; Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3302(a), 112 Stat. 741.

The GATT amendment also included a corollary 2-percentage point interest rate differential applicable for periods after December 31, 1994, in the interest rate applicable to large corporate tax underpayments in excess of $100,000.  Sec. 6621(c).

The above changes in the interest rates applicable to large corporate over- and underpayments were added by Congress as "outlay reduction[s] * * * to assist in offsetting the projected cost of the implementing legislation" relating to the GATT treaty.  S. Rept. 103-412, at 11 (1994); H. Rept. 103-826 (I), at 9 (1994), U.S.C.C.A.N. 1994, pp. 3773, 3781.  The Senate report explained as follows:

> As set forth below in the * * * [Congressional Budget Office] cost estimate, the Uruguay Round agreement includes a commitment by the United States to reduce U.S. tariffs which would cause a loss of receipts to the U.S. Treasury.  As explained above, the Budget Enforcement Act and Senate Rules require that these costs be offset.  Due to this pay-as-you go requirement, it is both "necessary" and "appropriate" that provisions designed to offset the costs of the Uruguay Round agreement be included in this implementing legislation.  [S. Rept. 103-412, at 135.]

Petitioners acknowledge that respondent, with respect to each of the years in issue, has refunded to petitioners all overpaid taxes and overpaid interest that petitioners paid to respondent, plus compound interest thereon through December 31, 1994.

As indicated, however, petitioners contend that respondent undercalculates, and has not paid petitioners, the full amount of the additional interest that accrued after December 31, 1994, on petitioners' cumulative accrued overpayment interest balance of approximately $1.6 billion that was outstanding on December 31, 1994, and that was not paid to petitioners until 2004 and 2005.

As petitioners read the above GATT amendment to section 6621(a), the GATT overpayment interest rate reduction does not apply to petitioners' December 31, 1994, overpayment interest balance. Petitioners read section 6621(a)(1) either as expressly supporting their interpretation or as vague and lacking a specific mandate that the reduced GATT interest rate is to apply to their December 31, 1994, overpayment interest balance. Petitioners argue that "In the absence of some specific instruction to the contrary, the interest continues to compound at the same rate at which interest first began to accrue on the tax overpayment"; i.e., at the regular rate. Petitioners argue further that the GATT amendment "directs that the change in interest rate * * * should be limited to a portion of the amounts owed to the taxpayer--with the remaining portion continuing to accrue interest at the regular rate."

Petitioners' arguments focus on, or are dependent primarily on, the interpretation of the flush language in section 6621(a)(1) that refers to an "overpayment of tax". Petitioners

argue that the words "overpayment of tax" do not include overpayment interest, particularly the overpayment interest balance that was outstanding on December 31, 1994.

Beginning January 1, 1995, petitioners effectively would place interest accrual on their overpayments of interest relating to 1979 through 1985 into three baskets:

First Basket: Interest accruing after December 31, 1994, relating to overpayments of tax of $10,000 or less and statutory interest thereon;

Second Basket: Interest accruing after December 31, 1994, relating to overpayments of tax in excess of $10,000 and statutory interest thereon;

Third Basket: Interest accruing after December 31, 1994, relating to overpayment interest balance outstanding as of December 31, 1994.

Petitioners would apply the GATT rate only to the contents of the second basket. To the contents of the first and third baskets, petitioners would apply the regular interest rate, not the GATT rate.

The third basket, however, suggested by petitioners is not supported by the statutory language. The second basket already includes post-December 31, 1994, interest accrual and compound interest thereon relating to corporate tax overpayments in excess of $10,000; namely, the subject matter to which the flush language of section 6621(a)(1) applies the reduced GATT interest rate.

For purposes of further interest accrual on petitioners' December 31, 1994, overpayment interest balance, it is statutorily placed in the second and only other basket.

Petitioners' interpretation of section 6621(a)(1) (that would place in a third basket interest accruing after December 31, 1994, on a corporation's December 31, 1994, overpayment interest balance) stretches the language of section 6621(a) beyond logic.

Disregarding fluctuations in the Federal short-term rate, the language of section 6621(a)(1) establishes a specific and definite overpayment interest rate where a corporation has made a tax overpayment for a year of $10,000 or less and another specific and definite overpayment interest rate where a corporation has made a tax overpayment in excess of $10,000.[4]

If or where the reduced GATT rate becomes applicable to a corporation for a year (because of a tax overpayment for the year in excess of $10,000), the flush language of section 6621(a)(1) does not provide its own, stand-alone, reduced interest rate that becomes applicable only to overpayments of tax. Rather, that language explicitly bumps the corporation back up into section 6621(a)(1)(B) and "substitutes" or replaces the "2 percentage points" therein with "0.5 percentage point". In that situation,

_____

[4] We note in the language of sec. 6621(a) the definite article "the" -- "The overpayment rate".

with respect to that corporation (and with respect to all overpayment interest accrual except that relating to the corporation's tax overpayment up to $10,000), section 6621(a)(1) effectively provides only one interest rate -- the reduced GATT rate.

In the above situation, in effect (for everything other than interest relating to a corporation's tax overpayment up to $10,000) the regular interest rate, for practical purposes, is eliminated from the statutory language of section 6221, and there remains in section 6621(a)(1) only one interest rate -- the GATT rate -- that applies to all further interest accrual relating to corporate overpayments of tax and to accrual of compound interest thereon.

Section 6621(a)(1) does not refer to overpayment "rates". Once the GATT trigger occurs, then any and all further interest after December 31, 1994, relating to or associated with that excess corporate overpayment, is to accrue only at the reduced GATT rate.

Our interpretation of the statutory language is supported by the holding of this Court in State Farm Mut. Auto. Ins. Co. v. Commissioner, 126 T.C. ___ (2006), filed today, and also by the recent holdings of the Court of Appeals for the Federal Circuit and the U.S. Court of Federal Claims in Gen. Elec. Co. v. United

States, 384 F.3d 1307 (Fed Cir. 2004), affg. on this issue and remanding in part 56 Fed. Cl. 488 (2003).

As explained in State Farm Mut. Auto. Ins. Co. v. Commissioner, supra (slip op. at 9), with regard to the language of section 6621(a)(1):

> The role of the phrase "overpayment of tax" is central to this dispute.  We find the phrase in question is a device to describe the occasion when the GATT rate is triggered for all interest computational purposes including compounding under section 6622.  We do not read the phrase "overpayment of tax" as a limitation on the scope of the applicability of the changed rate once triggered. * * *

The legislative history of the GATT rate change and the effective date language, set forth above, discuss only a change in the rate of interest "without distinguishing between the rate paid on an overpayment and the rate compounded."  State Farm Mut. Auto. Ins. Co. v. Commissioner, supra (slip op. at 10).  A bifurcation in the interest to be paid on the tax overpayment itself, and the interest to be paid on interest is not found in the statute.

In Gen. Elec. Co. v. United States, 384 F.3d at 1311, the Court of Appeals for the Federal Circuit explained its holding, in part, as follows:

> We think it highly unlikely that Congress intended the exception to the GATT rate for small overpayments to have such dramatic potential consequences for overpayments vastly larger than the modest overpayments of $10,000 or less that are eligible for the regular rate. * * * While the statutory

scheme is not easy to unravel, the most straightforward
interpretation of the statutory language leads us to reject
[the taxpayer's] submission.

In Gen. Elec. Co. v. United States, 56 Fed. Cl. at 496, the
Court of Federal Claims explained its holding, in part, as
follows:

> The GATT rate merely attaches prospective impact to the
> meeting of a condition as of the effective date of the
> statute, to wit, the existence of an overpayment for the
> relevant taxable year that exceeds $10,000. * * *

Petitioners read the language of section 6621(a)(1) ("to the
extent that an overpayment of tax * * * exceeds $10,000") as
providing more than the trigger for application of the GATT rate.
Petitioners read that language as limiting application of the
GATT rate to just the "overpaid taxes" and interest accruing on
the overpaid taxes after December 31, 1994, and petitioners
describe the December 31, 1994, accrued overpayment interest
balance as neither "'tax' nor something that was ever 'overpaid'"
by petitioners.

Petitioners refer us to Code sections and to various
situations in which overpayment interest is or has been treated
differently from overpayments of tax and from underpayment
interest. For example, section 6601(e)(1) specifically provides
that any reference to "tax" shall also refer to underpayment
interest ("any tax imposed by this title shall be deemed also to

refer to interest imposed by this section on such tax"), while no similar provision covers overpayment interest.

Under section 6511(a) a 3-year limitation period applies to a refund of an "overpayment of any tax," while a refund of overpayment interest is governed by the general 6-year period of limitation applicable to claims against the Government.  28 U.S.C. secs. 2401, 2501.  Gen. Instrument Corp. v. United States, 33 Fed. Cl. 4, 6 (1995).

Under section 6402(a) an overpayment "including any interest allowed thereon" may be credited against a taxpayer's other tax liabilities.  Prior to 1954, however, the predecessor to section 6402(a) referred only to "overpayment", and it was understood that the statutory language did not allow the crediting of overpayment interest.  See S. Rept. 1622, 83d Cong., 2d Sess. 5230 (1954) ("This section * * * changes existing law so as to permit expressly the crediting of interest on an overpayment against any outstanding liability for any tax.").

Prior to 1997, under section 6512(b)(1) this Court's jurisdiction with respect to an "overpayment" was held not to include overpayment interest.  Harrison v. Commissioner, T.C. Memo. 1994-614.  In 1997, section 7481(c) was amended to permit us to exercise jurisdiction over some overpayment interest.

In Rev. Proc. 87-43, 1987-2 C.B. 590, respondent took the position that section 6601(c) (which at that time suspended the

running of interest on a tax deficiency if respondent failed to make notice and demand on the taxpayer within 30 days of the taxpayer's filing of a waiver of restrictions on assessment) only suspended interest on a tax deficiency, not on the interest that had accrued on the underlying tax deficiency before the beginning of the suspension period.[5]

The above examples apparently persuade petitioners that when Congress wants overpayment interest treated the same as overpayments of tax, it knows how to explicitly so provide.

Certainly, the language of section 6621(a)(1) could be clearer. Congress could have made explicit in the statutory language what respondent argues and what we today hold -- by expressly providing in the flush language of section 6621(a)(1) language to the effect that the reduced GATT rate, if triggered, would apply to any December 31, 1994, overpayment interest balance.

Congress also could have made explicit in the statutory language what petitioners argue -- by expressly providing in the flush language of section 6621(a)(1) the GATT rate (rather than substituting in section 6621(a)(1)(B) the GATT rate for the regular rate), by leaving the regular rate in section 6621(a)(1)(B), and by providing language to the effect that the

---

[5] Congress later changed the interpretation set forth in Rev. Proc. 87-43, 1987-2 C.B. 590, by amending sec. 6601(c) to refer explicitly to accrued interest.

regular interest rate left in section 6621(a)(1)(B) would apply to any December 31, 1994, overpayment interest balance, even though a corporation had a tax overpayment in excess of $10,000.

As explained, however, on the basis of the language of section 6621(a)(1), as enacted, we conclude that the GATT rate applies to a corporation's December 31, 1994, overpayment interest balance for further accrual of interest thereon after December 31, 1994.

On brief, petitioners set forth an example involving a corporation's $100,000 tax overpayment for a year, as of March 15, 1990.  In petitioners' example, on January 1, 1992, respondent refunds to the corporation $50,000 in principal, and on January 1, 1996, respondent refunds the remaining $50,000 principal balance.  Petitioners then state:

> For the 1992–1995 period, the applicable interest rate is applied to $50,000 in remaining principal, plus previously accrued interest.  It is irrelevant to that latter computation that the "original" overpayment was $100,000.

But if, under the governing statutory language in petitioners' example, a corporation's overpayment of tax for a year in excess of $10,000 triggered a reduction in the overpayment interest rate, then the fact that the corporation's original overpayment was more than $100,000 would be highly relevant.  That is the situation presented to us herein.

Petitioners suggest that their calculations are supported by the manner by which interest calculations routinely are adjusted in commercial debtor-creditor relationships for changes either in the principal amount outstanding or in the interest rate. We disagree. The "wrinkle" petitioners acknowledge herein that is not typical in the routine debtor-creditor relationship is that petitioners seek to apply the reduced interest rate not to the full outstanding balance of the overpayment interest on the effective date of the rate reduction but only to a portion thereof. It is that wrinkle that is in issue, and we find no support in petitioners' examples for the proposition petitioners seem to put forth that under commercial debtor-creditor loan agreements a prospective reduction in the applicable interest rate similar to that reflected in the GATT amendment necessarily would not apply to overpayment interest balance on the effective date of the rate reduction.

We conclude that petitioners' December 31, 1994, $1.6 billion overpayment interest balance accrues interest after December 31, 1994, at the reduced GATT rate.

As a related issue, petitioners contend that under section 6621(a)(1) the $10,000 exemption from the reduced GATT rate should apply to the last $10,000 of their tax overpayment for each year.

Respondent counters that the $10,000 exemption applies to the first $10,000 of petitioners' tax overpayment for each year.

The amount of the additional interest in dispute on this issue is set forth below:

| Year | Post-Dec. 31, 1994, Additional Interest Accrual Claimed on $10,000 of Tax Overpayment |
|------|--------------------------------|
| 1979 | $2,461 |
| 1980 | 2,597 |
| 1981 | 2,597 |
| 1982 | 2,868 |
| 1983 | 2,857 |
| 1985 | 2,857 |

We find petitioners' contention counterintuitive and contrary to the statutory language. It is noteworthy that in petitioners' own memorandum of law filed herein on February 28, 2005 (in the context of a discussion of the first issue discussed above), petitioners describe the $10,000 exemption as applicable to the "first" $10,000 of a taxpayer's tax overpayment.

Respondent emphasizes that each of petitioners' corporate Federal income tax returns for 1979 through 1985, when initially filed with respondent, reflected overpayments of tax in the millions of dollars, and that the tax overpayments reflected on those tax returns were paid to petitioners on or about the date the tax returns were filed via refunds or credits to petitioners' taxes for other years and long before January 1, 1995. Accordingly, respondent argues that as of the January 1, 1995,

effective date of the GATT amendment, all of petitioners' then-remaining outstanding tax overpayments for each of the years in issue represented tax overpayments by petitioners in excess of $10,000, no portion of which qualifies for the exemption from the GATT rate.  We agree.

Under section 301.6611-1(b), Proced. & Admin. Regs., the date of overpayment of a tax is the date of payment of the first amount which, when added to previous payments, is in excess of the tax liability (including any interest, addition to tax, or additional amount).  This regulation provides that tax overpayments are to be refunded beginning with the first payment that exceeds the tax liability.  Accordingly, all of petitioners' tax overpayments for the years in issue that remained outstanding after December 31, 1994, and that petitioners eventually received in 2004 and 2005 constituted overpayments "in excess of $10,000" and, beginning January 1, 1995, accrued interest at the reduced GATT rate.

<u>Appropriate orders will be entered</u>.